UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| JAMES FOLEY and ) DANIELLE FOLEY, )     Plaintiffs ) )       v. ) ) TASER INTERNATIONAL, ) INC., )     Defendant ) ) | **COMPLAINT** |

## PARTIES

1.    The plaintiff, James Foley (hereinafter "Foley"), is a natural person residing at 27 Countryside Road, Grafton, County of Worcester, Commonwealth of Massachusetts.

2.    The plaintiff, Danielle Foley (hereinafter "Mrs. Foley"), is a natural person residing at 27 Countryside Road, Grafton, County of Worcester, Commonwealth of Massachusetts.

3.    The defendant, Taser International, Inc., (hereinafter "Taser"), is a duly organized corporation organized under the laws of the State of Arizona and has a usual place of business at 17800 85th Street, Scottsdale, Arizona.

## JURISDICTION

4.    Jurisdiction is based upon 28 U.S.C. Section 1332, as there is diversity of citizenship between the parties.  The amount in controversy exceeds the sum of seventy-five thousand ($75,000.00) dollars.

5.    The plaintiffs' causes of action arise from the defendant:

    a.    transacting business in the Commonwealth of Massachusetts;

b.    contracting to supply goods in the Commonwealth of Massachusetts;

c.    soliciting business in the Commonwealth of Massachusetts; and,

d.    causing tortious injury in the Commonwealth of Massachusetts by an act or omission both in and outside the Commonwealth of Massachusetts as it regularly solicits business or engages in other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Massachusetts.

FACTS

6.    At all times material hereto, Foley was employed by the Commonwealth of Massachusetts, Department of State Police, as a State Police Trooper (hereinafter a "State Trooper").

7.    At all times material hereto, Foley and Mrs. Foley have been lawfully married as husband and wife.

8.    On or about March 21, 2004, Foley incurred substantial orthopedic injuries to his left leg as a result of a motor vehicle accident (hereinafter "the motor vehicle accident"), in which Foley was involved while working as a State Trooper.

9.    On or about March 29, 2004, Foley underwent surgery to repair a fracture to his left femur which Foley incurred as a result of the motor vehicle accident.  During the surgery, hardware (hereinafter "surgical hardware"), was affixed to Foley's left femur to repair or reduce the fracture.

10.    At all times material hereto, Taser designed, manufactured, distributed, sold and/or maintained an electronic control device for use by law enforcement agencies commonly referred to by Taser as the Taser X-26 (hereinafter "the X-26").

11.    The X-26 employs patented neuromuscular incapacitation technology which affects a human being's sensory and motor nervous system thereby causing physical incapacitation.

12.    On or about February 6, 2006, Taser, by its agents, servants and/or employees, sponsored or offered a two-day, sixteen hour, seminar (hereinafter "the seminar") at the Massachusetts State Police Academy in New Braintree,

2

Massachusetts, on the use of the X-26 for law enforcement personnel.

13.  The seminar was conducted or taught by a Taser agent, servant or employee, one Dennis Woessner (hereinafter "Woessner").

14.  Foley was a student or participant at the seminar.

15.  As part of the seminar, Woessner offered the seminar participants the opportunity to experience a Taser device electric discharge (hereinafter "a Taser exposure"), in order to better understand the effects of the device upon a human being (hereinafter "the exposure offer").

16.  As a prerequisite to experiencing a Taser exposure, seminar participants were required to sign a release (hereinafter "the release"), reciting warnings and risks of a Taser exposure.  The release also recited a covenant not to sue and a hold harmless clause inuring to the benefit of Taser.  The release is attached hereto as **Exhibit 1.**

17.  The release included language which "… recommend(ed) but does not require … experiencing a Taser exposure by seminar participants."

18.  The release also contains language that a Taser exposure "… may cause physical exertion athletic-type injuries to some people … (which) … may result in injuries to muscles, tendons, ligaments, backs, joints and stress fractures."

19.  During the discussion about whether or not seminar participants would experience a Taser exposure, Woessner asked seminar participants to disclose any medical history which might in any way be affected by a Taser exposure.

20.  Foley informed Woesssner that Foley's left femur had a substantial amount of surgical hardware affixed to it.

21.  Foley also wrote on the release in the space provided for disclosure of pre-existing physical injuries that Foley had a "rod in left femur."

22.  Despite Foley's disclosure of the left femoral surgical hardware, Woessner advised Foley that a Taser exposure to Foley would not include an increased risk of harm or otherwise be injurious.

3

23.   Prior to intentionally experiencing a Taser exposure, Foley was "spotting" or assisting another seminar participant undergoing a Taser exposure.  While doing so, Foley stepped on a live X-26 probe, thus incurring a first, unintentional Taser exposure.

24.   After the exposure referred to in paragraph 23, Foley underwent an intentional Taser exposure (hereinafter "Foley's exposure").

25.   During Foley's exposure, Woessner and another person, at the direction and control of Woessner, each deployed two separate X-26 Tasers at Foley resulting in Foley receiving a double-strength Taser exposure.

26.   Upon experiencing the Taser exposure, Foley was assisted by "spotters" from the standing position to the ground. Foley immediately experienced pain in his left femoral area.

27.   On the evening of Foley's exposure (February 6, 2006), Foley presented at University of Massachusetts Medical Center in Worcester, Massachusetts (hereinafter "UMMC"), seeking medical treatment for pain related to Foley's exposure.

28.   On February 8, 2006, Foley was admitted to UMMC and was diagnosed as follows:

a.   Foley had a seriously bent or deranged surgical screw which had been affixed to Foley's left femur during his surgery of March 29, 2004; and,

b.   Foley had a new (and different from the 2004 femoral fracture) left femoral head fracture.

29.   On February 9, 2006, Foley underwent surgery at UMMC to correct the diagnoses referred to in paragraph 28.

30.   As a result of Foley's exposure, Foley has sustained permanent injuries, has experienced pain and suffering, and has been caused to suffer a diminution in wages and earning capacity.

31.   As a result of Foley's exposure, Mrs. Foley has been caused to suffer a loss of consortium with Foley.

4

CAUSES OF ACTION

### Count I.

### James Foley v. Taser International, Inc.
### for Negligence

32.  Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 31.

33.  Taser owed a duty of care to Foley.

34.  Taser breached its duty of care to Foley.

35.  Taser has caused damage to Foley.

WHEREFORE, the plaintiff, James Foley, demands judgment in his favor against the defendant, Taser International, Inc.

### Count II.

### James Foley v. Taser International, Inc.
### for Breach of Express Warranty

36.  Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 35.

37.  Prior to and at the time of Foley's exposure, Woessner was an agent, servant or employee of Taser.

38.  Woessner expressly affirmed (hereinafter "Woessner's affirmation to Foley"), that a Taser exposure to Foley would be safe and would not cause physical injury to Foley.

39.  The Foley exposure did not conform to Woessner's affirmation to Foley.

40.  Woessner's description of the function of the X-26 did not conform to the actual function of the X-26 during Foley's exposure.

41.  Taser breached its express warranty to Foley.

WHEREFORE, the plaintiff, James Foley, demands judgment in his favor against the defendant, Taser International, Inc.

5

## Count III.

### James Foley v. Taser International, Inc. for Breach of Implied Warranty of Merchantability

42.  Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 41.

43.  At all times material hereto, Taser was a merchant of an electronic control device for use by law enforcement agencies commonly referred to as the Taser X-26.

44.  The Taser X-26 was not merchantable or fit for the ordinary purpose for which the X-26 was to be used.

45.  Taser breached its implied warranty of merchantability to Foley.

WHEREFORE, the plaintiff, James Foley, demands judgment in his favor against the defendant, Taser International, Inc.

## Count IV.

### James Foley v. Taser International, Inc. for Breach of Implied Warranty of Fitness for a Particular Purpose

46.  Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 45.

47.  At all times material hereto, Taser was a seller of an electronic control device for use by law enforcement agencies commonly referred to as the Taser X-26.

48.  At all times material hereto, Taser had reason to know of the particular purpose for which the Taser X-26 was to be used.

49.  At all times material hereto, Foley relied on Taser's skill or judgment in providing the Taser X-26.

50.  Taser breached its implied warranty of fitness for a particular purpose to Foley.

WHEREFORE, the plaintiff, James Foley, demands judgment in his favor against the defendant, Taser International, Inc.

## Count V.

### Danielle Foley v. Taser International, Inc. for Loss of Consortium based upon Negligence

51.   Mrs. Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 50.

52.   As a result of Foley's exposure, Mrs. Foley has been caused to suffer a loss of consortium with Foley.

WHEREFORE, the plaintiff, Danielle Foley, demands judgment in her favor against the defendant, Taser International, Inc.

## Count VI.

### Danielle Foley v. Taser International, Inc. for Loss of Consortium based upon Breach of Express Warranty

53.   Mrs. Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 52.

54.   As a result of Foley's exposure, Mrs. Foley has been caused to suffer a loss of consortium with Foley.

WHEREFORE, the plaintiff, Danielle Foley, demands judgment in her favor against the defendant, Taser International, Inc.

## Count VII.

### Danielle Foley v. Taser International, Inc. for Loss of Consortium based upon Breach of Implied Warranty of Merchantability

55.   Mrs. Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 54.

56.   As a result of Foley's exposure, Mrs. Foley has been caused to suffer a loss of consortium with Foley

WHEREFORE, the plaintiff, Danielle Foley, demands judgment in her favor against the defendant, Taser International, Inc.

## Count VIII.

### Danielle Foley v. Taser International, Inc. for Loss of Consortium based upon Breach of Warranty of Fitness for a Particular Purpose

57.    Mrs. Foley reasserts and incorporates by reference the allegations contained in paragraphs 1 through 56.

58.    As a result of Foley's exposure, Mrs. Foley has been caused to suffer a loss of consortium with Foley.

WHEREFORE, the plaintiff, Danielle Foley, demands judgment in her favor against the defendant, Taser International, Inc.

**THE PLAINTIFFS CLAIM A TRIAL BY JURY
ON ALL ISSUES TO WHICH THEY ARE ENTITLED**

Plaintiffs,
James Foley and
Danielle Foley,
By their attorney,

/s/
Thomas F. Healy
BBO #22800
The Healy Law Firm LLC
P. O. Box 920356
Needham, MA  02492
(781) 431-0040

Dated:  February 2, 2009